**Jared DeFAZIO, Petitioner,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–3174V.**

United States Court of Federal Claims.

Feb. 20, 1998.

Ronald C. Homer, Boston, MA, for petitioner.

Elizabeth F. Kroop and David L. Terzian, with whom were Frank W. Hunger, Assistant Attorney General, and John Lodge Euler, Acting Director, Washington, DC, for respondent.

*OPINION*

ANDEWELT, Judge.

I.

In this action, petitioner, Jared DeFazio, seeks compensation under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. §§ 300aa–1 to –34 (the Vaccine Act), for injuries he allegedly suffered as the result of a series of three DPT (diphtheria-pertussis-tetanus) vaccinations administered on April 13, May 11, and June 16, 1977. Within days after each of the first two vaccinations, and possibly after the third, petitioner suffered seizures. After receiving the second vaccination, petitioner was prescribed anti-convulsant medication. Thereafter, petitioner occasionally suffered additional seizures, the last of which occurred in November 1980. In 1984, petitioner ceased taking anti-convulsant medication.

Petitioner currently suffers from several physical conditions which have resulted in behavioral and educational difficulties. He is legally blind as a result of a condition known as nystagmus and suffers from attention deficit/hyperactivity disorder (ADHD) and depression. In his petition, petitioner alleges in pertinent part that the three DPT vaccinations caused a seizure disorder that resulted

in his current behavioral and educational difficulties. Pursuant to Rule 4(b) of this court's Vaccine Rules, respondent filed a report addressing the contentions in the petition. Therein, respondent agreed that petitioner's residual seizure disorder resulted from the DPT vaccinations. With respect to the relationship between petitioner's seizure disorder and his current behavioral and educational difficulties, respondent stated: "Upon review, DVIC medical personnel have concluded that compensation for Jared's residual seizure disorder (now resolved) and educational and behavioral difficulties (sequelae of the injury), is appropriate in this case." Respondent took the position that compensation was not warranted for petitioner's nystagmus and related visual problems, and petitioner later agreed with this conclusion.

After considering respondent's Rule 4(b) report, the special master, without specifically commenting on petitioner's entitlement to compensation for his behavioral and educational difficulties, ordered each party to submit a life care plan detailing petitioner's future medical needs. After conducting two hearings, the special master concluded in pertinent part that petitioner's current behavioral and educational difficulties were not the result of his vaccine-induced residual seizure disorder and in a June 25, 1997, decision dismissed the petition. Petitioner thereafter filed a motion pursuant to Section 12(e)(1) of the Vaccine Act seeking review by this court of the special master's decision. For the reasons set forth below, this court affirms the special master's decision.

## II.

■ The Vaccine Act establishes procedures to compensate individuals for injuries or deaths resulting from the administration of specified vaccines. Section 14 of the Vaccine Act, entitled "Vaccine Injury Table," identifies certain vaccines and specifies illnesses, disabilities, injuries, and conditions (hereinafter conditions) that have been associated with those vaccines. A petitioner can secure compensation under the Vaccine Act by demonstrating that the administration of a listed vaccine in fact caused or significantly aggravated a particular condition, whether or not that condition is listed in the Vaccine Injury Table. 42 U.S.C. §§ 300aa–11(c)(1)(C)(ii) and –13(a)(1). A petitioner also can secure compensation if the petitioner can demonstrate by a preponderance of the evidence that the vaccine recipient suffers from a condition specified in the Vaccine Injury Table (Section 14(a)) and that "the first symptom or manifestation of the onset or of the significant aggravation of [the condition] occurred within the time period after vaccine administration set forth in the Vaccine Injury Table."[1] If a petitioner makes such a showing, then compensation is due unless there is a preponderance of the evidence that the condition "is due to factors unrelated to the administration of the vaccine." 42 U.S.C. § 300aa–13(a)(1)(B). With respect to the amount of compensation available, Section 15 specifies the allowable recovery of unreimbursed expenses that "result from the vaccine-related injury." The petitioner has the burden of proving the elements that underlie entitlement to compensation, including proof that the vaccine re-

---

1. With respect to DPT vaccinations, the Vaccine Injury Table provides:

DPT . . .

| Illness, disability, injury or conditions covered: | Time period for first symptom or manifestation of onset or of significant aggravation after vaccine administration: |
|---|---|
| * * * | |
| B. Encephalopathy . . . | 3 days |

\* \* \*

| | |
|---|---|
| D. Residual seizure disorder . . . | 3 days |
| E. Any acute complication or sequela (including death) of an illness, disability, injury, or condition referred to above which illness, disability, injury, or condition arose within the time period prescribed. . . . | Not applicable |

42 U.S.C. § 300aa–14(a)(I).

cipient's current condition is sequela to a vaccine-related injury. *Hossack v. Secretary of Dept. of Health & Human Servs.*, 32 Fed. Cl. 769, 776 (1995).

### III.

Petitioner's life care plan anticipates that petitioner will need continued assistance in addressing his behavioral and educational difficulties, and petitioner seeks compensation for the costs of securing such assistance. During the two hearings upon which the special master based her decision dismissing the petition, the special master heard testimony from a series of witnesses, including two medical doctors from each party. During these hearings, consistent with its Rule 4(b) report, respondent did not contest that petitioner's residual seizure disorder had occurred within the time period after administration of the DPT vaccinations set forth in the Vaccine Injury Table and that petitioner had suffered a vaccine-related injury within the meaning of Section 33(5) of the Vaccine Act.

As to the alleged causal relationship between petitioner's residual seizure disorder and his current behavioral and educational difficulties, up until the first of the two hearings both the special master and petitioner interpreted respondent's Rule 4(b) report as conceding that petitioner's ADHD and depression were sequela to petitioner's residual seizure disorder and therefore that treatment for these conditions was potentially compensable under the Vaccine Act. At the first hearing, held on August 16, 1996, however, respondent indicated that it did not concede that treatment for petitioner's behavioral and educational difficulties was necessarily compensable under the Vaccine Act, but rather only that petitioner had suffered a residual seizure disorder and that petitioner was entitled to compensation for those behavioral and educational difficulties that petitioner could demonstrate had resulted from that disorder. Respondent then requested that the court allow it to present testimony

showing that petitioner's ADHD and depression are not sequela to his seizure disorder.

Over petitioner's objections, the special master allowed respondent to present such testimony. After conducting the second hearing on January 31, 1997, during which respondent presented the additional testimony, the special master issued her decision dismissing the petition and denying compensation for each item sought in petitioner's life care plan. In her decision, the special master addressed at some length the conflicting evidence concerning the relationship between petitioner's residual seizure disorder and his current behavioral and educational difficulties. The special master stated, *inter alia,* as follows:

> The court believes that Jared's early problems were primarily behavioral and bore no relation to his [residual seizure disorder]. The court is willing to believe that at some point Jared displayed symptoms consistent with a diagnosis of ADHD. However, the seizures Jared experienced after his DPTs were not severe enough to cause it.

*DeFazio v. Secretary of Dept. of Health & Human Servs.*, No. 90–3174V, 1997 WL 383142, at *13 (Fed.Cl. June 25, 1997). The special master ultimately concluded "that Jared's depression, ADHD, and other behavioral problems are not sequelae of his on-Table [residual seizure disorder]." *Id.* at *14.

### IV.

In his motion for review, petitioner does not dispute the special master's characterization of the determinative issue as whether petitioner's depression, ADHD, and other behavioral problems are sequela to his residual seizure disorder. Nor does petitioner contend that the special master committed reversible error in weighing the competing testimony and concluding that petitioner's depression, ADHD, and other behavioral problems are not sequela to his residual seizure disorder.[2] Indeed, petitioner does not

---

**2.** Although petitioner presented testimony indicating that petitioner may have also suffered from encephalopathy as a result of the DPT vaccinations, petitioner did not allege encephalopa-

thy as a basis for compensation in the petition, and petitioner does not contend in his motion for review that the special master erred in failing to

address the special master's analysis of the legal and factual issues based on the evidence submitted by the parties. Instead, petitioner focuses on the procedures the special master adopted in developing the evidentiary record. Petitioner contends that the special master should have treated respondent's Rule 4(b) report as a definitive and final concession that petitioner's depression, ADHD, and other behavioral problems resulted from petitioner's residual seizure disorder and therefore that the special master should have precluded respondent from presenting contrary evidence at the January 31, 1997, hearing.

### V.

This court reviews special master decisions under a deferential standard. The court may set aside a special master's decision only if the decision is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. 300aa–12(e)(2)(B). Rulings by a special master on issues that are within the special master's discretion are reviewed under an abuse of discretion standard. *Munn v. Secretary of Dept. of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992). Such a standard of review is appropriate here in reviewing the special master's decision to allow respondent to present the disputed testimony because both the Vaccine Act and this court's Vaccine Rules grant the special master broad discretion in determining whether, when, and how to take evidence in vaccine cases.

Section 12(d)(3)(B) of the Vaccine Act mandates that the special master permit the parties to present certain evidence in writing but otherwise grants the special master broad discretion as to how to secure relevant information. Section 12(d)(3)(B) provides:

> In conducting a proceeding on a petition a special master—
>
> (i) may require such evidence as may be reasonable and necessary,
>
> (ii) may require the submission of such information as may be reasonable and necessary,
>
> (iii) may require the testimony of any person and the production of any documents as may be reasonable and necessary,
>
> (iv) shall afford all interested persons an opportunity to submit relevant written information—
>
> > (I) relating to the existence of the evidence described in section 300aa–13(a)(1)(B) of this title, or
> >
> > (II) relating to any allegation in a petition with respect to the matters described in section 300aa–11(c)(1)(C)(ii) of this title, and
>
> (v) may conduct such hearings as may be reasonable and necessary.

The Vaccine Act further requires this court to adopt procedural rules that assure that proceedings before the special master are informal and expeditious,[3] and the rules that this court adopted pursuant to this mandate grant the special master broad discretion in determining how to achieve these aims. *See* RCFC, App. J. For example, Vaccine Rule 1 states: "In all matters not specifically provided for by the Vaccine Rules, the special master may regulate the applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide cases promptly and efficiently." Vaccine Rule 8 further provides:

> (B) include flexible and informal standards of admissibility of evidence,
>
> (C) include the opportunity for summary judgment,
>
> (D) include the opportunity for parties to submit arguments and evidence on the record without requiring routine use of oral presentations, cross examinations, or hearings, and
>
> (E) provide for limitations on discovery and allow the special masters to replace the usual rules of discovery in civil actions in the United States Court of Federal Claims.

---

grant compensation on the ground that encephalopathy caused petitioner's current condition.

**3.** Section 12(d)(2) of the Vaccine Act provides:

The special masters shall recommend rules to the Court of Federal Claims and, taking into account such recommended rules, the Court of Federal Claims shall promulgate rules [that] shall—

(A) provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions,

(a) General. The special master in each case, based on the specific circumstances thereof, shall determine the format for taking evidence and hearing argument. The particular format for each case will be ordered after consultation with the parties. . . .

(b) Evidence. In receiving evidence, the special master will not be bound by common law or statutory rules of evidence. The special master will consider all relevant, reliable evidence, governed by principles of fundamental fairness to both parties.

Herein, the evidence the special master allowed respondent to present at the January 31, 1997, hearing is both relevant and reliable. Hence, pursuant to Vaccine Rule 8, the central issue before the court is whether the special master's decision to allow respondent to introduce such evidence is sufficiently at odds with the "principles of fundamental fairness to both parties" so as to constitute an abuse of the discretion allowed the special master in assembling the record. In *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed.Cir.1991), the Court of Appeals for the Federal Circuit articulated the abuse of discretion standard as follows:

An abuse of discretion may be found when (1) [the decision maker's] decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of the law; (3) [the decision maker's] findings are clearly erroneous; or (4) the record contains no evidence upon which the [decision maker] rationally could have based its decision.

## VI.

Petitioner bases his contention that the special master abused her discretion on allegations that (1) respondent's August 16, 1996, contention that petitioner's behavioral and educational difficulties are not sequela to his seizure disorder constituted a reversal of respondent's prior position taken 19 months earlier in respondent's Rule 4(b) report; (2) the 19–month time period between the filing of respondent's Rule 4(b) report and the August 16, 1996, hearing constitutes an unreasonable delay in respondent formulating its final position; (3) respondent acted negligently in not reaching its final position earlier because the evidence upon which respondent relied existed even prior to the date of respondent's Rule 4(b) report; and (4) petitioner was prejudiced by the 19–month delay in that he suffered mental anguish and incurred increased costs.

The requirement in the Vaccine Rules that the respondent file a Rule 4(b) report is an integral part of the procedures designed to secure the efficient handling of petitions filed under the Vaccine Act. The filing of such a report promotes efficiency by helping to narrow and define the issues in dispute. In her decision dismissing the petition, the special master correctly recognized that respondent's Rule 4(b) report had failed optimally to promote efficiency in that it complicated rather than simplified certain issues. The special master explained: "[M]uch confusion (and expense) in this case could have been avoided by respondent more clearly delineating its position in its Rule 4(b) report and in subsequent status conferences prior to trial because, in fact, respondent was unwilling to compensate Jared for any of his current educational and behavioral problems." *De Fazio,* 1997 WL 383142, at *1.

But although the special master correctly noted the deficiency in respondent's Rule 4(b) report and the resulting harm to petitioner, there are countervailing factors in the record that support the special master's decision to allow respondent to present evidence contesting petitioner's allegation that his ADHD and depression are sequela to his residual seizure disorder. First, the special master's determination to allow respondent to present the disputed evidence tends to promote a central purpose underlying the Vaccine Act—to provide compensation to individuals who have special needs as a result of vaccine-related injuries. See H.R. REP. No. 99–908, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344. It is axiomatic that the more relevant medical information a special master considers, the more likely the special master will ascertain the ultimate truth as to whether a petitioner's condition is in fact the result of a vaccination. Hence, the special master's decision to allow respondent to sub-

mit additional medical evidence into the record served to increase the likelihood that the special master would come to the correct conclusion as to the existence of a causal relationship between petitioner's DPT vaccinations and his behavioral and educational difficulties and, hence, as to petitioner's entitlement to compensation under the standards articulated in the Vaccine Act. Indeed, that additional evidence ultimately was crucial to the compensation decision. Had the special master not allowed respondent to present the additional testimony, the special master apparently would have found in petitioner's favor and petitioner would have received compensation under the Vaccine Act even though consideration of all of the available evidence would have convinced the special master that petitioner's behavioral and educational difficulties were not the result of his vaccine-related injury.[4]

Second, the facts in this case suggest that petitioner may share at least some of the blame for the 19–month delay in respondent formulating its final position as to whether petitioner's current behavioral and educational difficulties were the result of his residual seizure disorder. Vaccine Rule 2(e)(1)(ii) requires a petitioner to submit along with its petition "[a]ll available physician and hospital records relating to ... the injury ..., [and] any post vaccination treatment of the injured person, including all in-patient and out-patient records, provider notes, test results and medication records." Petitioner, however, failed to submit his psychological and psychiatric records along with his petition. Moreover, despite respondent's request after the petition was filed, petitioner failed to secure and submit existing records prior to respondent filing its Rule 4(b) report. These medical records are potentially relevant to an assessment of whether petitioner's behavioral and educational difficulties could be attrib-

uted to his seizure disorder. Hence, had petitioner timely produced these documents, it is possible that respondent may have reached its final position on compensation before filing its Rule 4(b) report or at least at some time well before the August 16, 1996, hearing.

■ As described above, the Vaccine Act and this court's rules grant the special master significant discretion in establishing procedures for gathering relevant evidence. For the reasons described above, the court cannot conclude that the special master's determination to allow respondent to present the disputed testimony is "unreasonable, arbitrary, or fanciful." *Hendler,* 952 F.2d at 1380. To the contrary, the special master's determination appears rational, consistent with the policies underlying the Vaccine Act, and ultimately consistent with the "principles of fundamental fairness to both parties." [5]

### VII.

Petitioner presents the alternative argument that the special master erroneously based her decision in part on the conclusion that even if petitioner received compensation, he would not voluntarily seek or accept treatment. During the August 16, 1996, and January 31, 1997, hearings, petitioner's counsel acknowledged that petitioner currently was not accepting treatment. Counsel argued, however, that compensation could be placed in a reversionary trust so that if petitioner continued to refuse treatment, any unused portion of the award would be returned to the government. In the course of rejecting this request, the special master explained:

> The court believes that even if Jared received an award, it is highly likely that he would continue to reject therapy, medication, and educational opportunities. The

---

4.  Petitioner has not alleged that he was denied an opportunity to confront and respond to the disputed testimony.

5.  The case law cited in petitioner's motion for review, *Koston v. Secretary of Dept. of Health & Human Servs.,* 23 Cl.Ct. 597 (1991), *aff'd,* 974 F.2d 157 (Fed.Cir.1992); *Horner v. Secretary of Health & Human Servs.,* 35 Fed.Cl. 23 (1996); *Vant Erve v. Secretary of Health & Human Servs.,*

No. 92–341V, 1997 WL 763462 (Fed.Cl. Nov. 21, 1997), does not support a conclusion that the special master abused her discretion when she allowed the presentation of the disputed testimony. Indeed, in each of those cases, the court held that it is an abuse of discretion for a special master to refuse to consider highly relevant and probative evidence concerning entitlement. *See also Kaminski v. Secretary Health & Human Servs.,* 39 Fed.Cl. 253 (1997).

court raised this problem at the hearing. There was discussion of the possibility of an award going into a reversionary trust so that if unused, it would revert back to the government at Jared's death. But a reversionary trust is not an acceptable solution if it is probable the funds would not be expended.

*De Fazio,* 1997 WL 383142, at *13.

The special master's conclusion that petitioner likely will continue to reject treatment, however, represents an alternative ground for denying compensation rather than an integral part of a single ground. The special master's intention in this regard is apparent from her use of the phrase "even if" both in the above quotation ("even if Jared had received an award, . . . he would continue to reject therapy") and in the introductory paragraph of her discussion of this issue in which she stated: "The court is also faced with the issue that even if it had found that Jared's ADHD and other problems were related to his [residual seizure disorder], it is quite clear from the record that Jared is refusing therapy . . ." *Id.* The special master further clarified that she did not view her prediction that petitioner will continue to reject treatment into the future as a sine qua non to her decision to dismiss the petition when she concluded in the final sentence of her discussion of the merits of petitioner's claim as follows: "In sum, the court finds that Jared's depression, ADHD, and other behavioral problems are not sequelae to his on-Table [residual seizure disorder]." *Id.* at *14. As discussed above, that finding alone is sufficient to support a dismissal of the petition.[6]

Although the court concludes that the special master did not abuse her discretion when she relied upon the disputed testimony in

dismissing the instant petition on the ground that petitioner failed to establish that his current behavioral and educational difficulties are sequela to his residual seizure disorder, the court notes that the alternative ground proposed by the special master—that petitioner likely will continue to reject treatment—appears problematic. In his motion for review, petitioner discusses the pertinent facts in some detail. According to that discussion, petitioner currently is 20 years old and had accepted treatment for the first 18 years of his life. Hence, petitioner's refusal to accept treatment is of relatively recent origin. As to the reason petitioner decided no longer to accept treatment, petitioner explains that a medical expert testified that petitioner is in a state of denial as to his current condition. This expert opinion appears compelling because the record firmly establishes that treatment would benefit petitioner and significantly improve the quality of petitioner's life. In this setting, for the special master reasonably to find that petitioner will continue to refuse treatment into the future, the special master would have to conclude that petitioner likely will remain in a state of denial and continue to refuse to take advantage of opportunities that could benefit his life significantly. Such a prediction would seem difficult to make absent some compelling supportive evidence concerning petitioner's psychological state or t e strength of petitioner's current conviction to forego treatment.

In its response to petitioner's motion for review, respondent's fails to present any evidence to support the special master's conclusion that petitioner will continue to refuse treatment into the future. Rather, respondent classifies the special master's finding that petitioner will continue to refuse treat-

---

6. Various statements by the special master in her provision-by-provision analysis of petitioner's life care plan also support a conclusion that the special master's determination that petitioner likely will continue to refuse treatment represents an alternative ground for dismissing the petition. For example, in her discussion concerning petitioner's request for compensation to cover psychotropic medication and psychotropic monitoring, the special master indicated alternative grounds for rejecting compensation, as follows:

The court has ruled that Jared's ADHD, depression, and any other disorders are not related to his vaccine injury. The court also notes that since Jared is refusing medication, an award for psychotropic medication and related liver and blood tests would be speculative. Therefore, the court does not award compensation for psychotropic medication and monitoring. *Id.*

ment as dicta. Respondent argues that the special master correctly based her dismissal of the petition on the independent ground that petitioner has failed to establish that his current behavioral and educational difficulties are sequela to his residual seizure disorder. Given the tack taken in respondent's brief and the court's comments above, this court cannot affirm the special master's dismissal of the petition on the independent ground that petitioner will continue to refuse treatment into the future without first reviewing the entire record or requiring respondent to provide a more comprehensive discussion of the pertinent portions of the supporting record. Because the court concludes that the special master correctly dismissed the petition on the ground that petitioner failed to demonstrate that his current behavioral and educational difficulties were the result of his residual seizure disorder, pursuing either of these alternatives would constitute a waste of judicial resources. Hence, the court affirms the special master's decision solely on the ground that petitioner has failed to demonstrate that his current condition is sequela to his Table injury, and the court will not review the special master's prediction as to petitioner's willingness to accept treatment into the future.

*Conclusion*

For the reasons set forth above, this court affirms the special master's June 25, 1997, decision. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.